UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARY F.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

6:20-CV-6735-LJV
DECISION & ORDER

---

On September 18, 2020, the plaintiff, Gary F. ("Gary"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On September 4, 2021, Gary moved for judgment on the pleadings, Docket Item 13; on February 1, 2022, the Commissioner responded and cross-moved for

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Gary applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Docket Item 11 at 162, 164. One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

judgment on the pleadings, Docket Item 14; and on March 15, 2022, Gary replied, Docket Item 15.

For the reasons that follow, this Court grants Gary's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Gary argues that the ALJ erred in two ways.  Docket Item 13-1.  First, he argues that the ALJ failed to "properly evaluate opinions from [his] primary care physician and the consultative examiner."  *Id.* at 1.  Second, he argues that the ALJ "relied on his own lay interpretation of the raw medical record" to formulate Gary's residual functional capacity ("RFC").[4]  This Court agrees that the ALJ erred and, because that error was to Gary's prejudice, remands the matter to the Commissioner.

For claims filed after March 27, 2017, such as Gary's,[5] the ALJ evaluates medical opinion evidence under the framework in 20 C.F.R. §§ 404.1520c and 416.920c.  *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).  Under the new regulations, an ALJ will consider opinions from a claimant's medical sources but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s]."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ "will articulate in

---

[4] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. §§ 404.1545 (DIB); 416.945 (SSI), "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

[5] Gary's applications are dated February 23, 2018, Docket Item 11 at 162, and March 15, 2018, *id.* at 164.  But the initial disability determination by the Commissioner indicates that Gary filed both applications on February 21, 2018.  *Id.* at 84, 85.  That discrepancy does not affect this decision.

[his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions" in light of the regulatory factors. *Id.* §§ 404.1520c(b) and (c)(1)-(5), 416.920c(b) and (c)(1)-(5).

The Code of Federal Regulations lists five factors that the ALJ must consider when weighing medical opinions: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion. *See id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ is required specifically to "explain how [he or she] considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [he or she] considered the [remaining] factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

In formulating Gary's RFC,[6] the ALJ did not find any of the medical opinions persuasive.[7] *See* Docket Item 11 at 30-32. But because the ALJ did not address the

---

[6] The ALJ determined that Gary has the RFC "to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except [that] he can stand and/or walk for up to 4 hours in an 8[-]hour workday[] and can frequently handle, finger, push, and/or pull with both upper extremities. The claimant can occasionally balance, stoop, kneel, crouch, and crawl[;] can occasionally climb stairs and ramps[;] can occasionally climb ladders, ropes[,] and scaffolds[;] can occasionally be exposed to vibrations, unprotected heights[,] and moving machinery parts[;] and can have occasional exposure to dust, noxious odors and fumes, and poor ventilation. He requires a moderate noise work environment, as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations." Docket Item 11 at 26.

[7] In addition to the opinions of the treating physician and the consultative examiner, the ALJ also considered the May 23, 2018 report of state agency consultant R. Abueg, M.D. *See* Docket Item 11 at 64-73, 74-83 (Dr. Abueg's report, replicated at Exhibits 1A and 2A in the administrative transcript). The ALJ did not find Dr. Abueg's

4

consistency between opinions that he discounted, and because he offered little more than conclusions as his reason for discounting them, the ALJ erred and remand is required.

Treating physician Maureen Perry, D.O., completed four employability assessments between October 2016 and November 2017. *See id.* at 263-66 (October 10, 2016 report),[8] *id.* at 322-325 (February 13, 2017 report), *id.* at 329-32 (April 13, 2017 report), *id.* at 339-42 (November 14, 2017 report). She diagnosed Gary with "aneurysm of [the] brain," *id.* at 265; "radiculopathy of C spine," *id.*; and "inflammatory/psoriatic arthritis," *id.* at 340. Dr. Perry consistently found that Gary is "very limited" in prolonged walking, standing, sitting, lifting, carrying, pushing, and pulling, meaning that he could perform those activities for only "1-2 [h]ours" in an 8-hour workday. *Id.* at 266, 325, 332, 342. In her November 14, 2017 report, Dr. Perry opined that Gary "is unable to participate in any activities" and that his "condition is not expected to improve."[9] *Id.* at 340.

---

opinion persuasive. *See id.* at 32. Gary does not argue that the ALJ erred in evaluating Dr. Abueg's findings.

[8] Dr. Perry did not date that report, but the parties agree that she completed it on October 10, 2016. *See* Docket Item 13-1 at 12 (Gary's memorandum of law), Docket Item 14-1 at 12-13 (Commissioner's memorandum of law).

[9] Dr. Perry also opined that Gary "appears permanently disabled." Docket Item 11 at 340. The ALJ correctly noted that "Dr. Perry's statements regarding the claimant's inability to perform any work are not considered to be opinion testimony[;] rather, they are statements intruding on an issue reserved to the Commissioner." *See id.* at 31 n.4; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). An "opinion" by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Id.* §§ 404.1527(d)(1), 416.927(d). Nonetheless, in such a circumstance, the ALJ still must analyze what is behind the opinion or recontact the provider to request a translation of the opinion into language that fits the Social Security context. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved

5

The consultative examiner, Harbinder Toor, M.D., completed an assessment of Gary's functional limitations on April 26, 2018. *See id.* at 607-11 (Dr. Toor's report). During the examination, Gary had difficulty ambulating and was in "moderate pain." *See id.* at 608 (Dr. Toor noted that Gary's "[g]ait [is] abnormal," he was "slightly limping towards [the] right side," and "[h]eel-to-toe walking is difficult" for him). Gary also exhibited "[t]enderness in the wrists," "slight tenderness" in the left knee, and "[t]enderness and slight swelling in the right knee." *Id.* at 609. Dr. Toor diagnosed Gary with "psoriatic arthritis in multiple joints, including the lower back, hips, and the knees"; carpal tunnel syndrome[;] and lower back pain "radiat[ing] to the right leg." *Id.* at 607. Dr. Toor opined that Gary would have a "moderate to marked limitation [in] standing, walking, lifting, and carrying," and a "moderate limitation" in "sitting [for] a long time." *Id.* at 610.

The ALJ found that Dr. Perry's opinions were "not supported by her own contemporaneous treatment notes" and were "inconsistent with other contemporaneous records[] and the record as a whole." *Id.* at 31. The ALJ discounted Dr. Toor's findings because "[t]he record does not establish that virtually any of the signs [Dr. Toor] observed were observed by treatment providers around the time of the examination." *Id.* at 30. And the ALJ concluded that the opinions of Dr. Perry and Dr. Toor did not establish that Gary "was functionally debilitated for a period of sufficient length to warrant a favorable finding." *Id.* at 31 (evaluating Dr. Perry's opinions); *see id*. at 30 (evaluating Dr. Toor's opinion).

---

to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added).

6

In finding the opinions of Dr. Perry and Dr. Toor unpersuasive, the ALJ "fail[ed] to adequately consider and apply the new regulatory factors" to his analysis. *See Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). Most significantly, he did not address the consistency of those opinions with each other, nor did he adequately and accurately address the support each physician provided for them. And the ALJ was required to do both. *See Angela H.-M. v. Comm'r of Soc. Sec.*, -- F. Supp. 3d --, 2022 WL 4486320, at *4 (W.D.N.Y. 2022) (holding that under the new regulations, an ALJ always must "explain how [he] considered the 'supportability' and 'consistency' factors for a medical source's opinion.") (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

For example, "the ALJ considered the medical opinions in isolation and did not account for the consistency of [Dr. Perry's and Dr. Toor's] opinions with each other." *See Ingrid T.G. v. Comm'r of Soc. Sec.*, 2022 WL 683034, at *9 (S.D.N.Y. Mar. 8, 2022); *see also Mark K. v. Comm'r of Soc. Sec.*, 2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) ("Both supportability and consistency in part require comparison of the medical opinions with other medical sources") (citing 20 C.F.R. § 404.1520c(c)(1), (2)). In fact, the ALJ did not even acknowledge the substantial similarities between the two physicians' opinions. *Compare* Docket Item 11 at 610 (Dr. Toor's opining that Gary would have a "moderate to marked limitation [in] standing, walking, lifting, and carrying" and a "moderate limitation" in "sitting [for] a long time") *with id*. at 266, 325, 332, 342 (Dr. Perry's opining that Gary is "very limited" in prolonged walking, standing, sitting, lifting, and carrying). Especially because the new regulations no longer require the ALJ

7

to assign specific weight to opinion evidence or, absent detailed analysis, to give controlling weight to the opinions of treating physicians, *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("[The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [] medical sources"), that error alone requires remand.  *See Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) ("If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [his] explanation upon a misreading of the record, remand is required") (citation omitted), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

But in addition to his failure to address the consistency between Dr. Perry's and Dr. Toor's opinions, the ALJ also erred in evaluating the supportability of those opinions.  *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[S]upportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion"), *report and recommendation adopted sub nom. Vellone o/b/o Vellone v. Saul*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).  For example, the ALJ found that Dr. Toor's opinion was "supported by his own observations" but nevertheless discounted that opinion because it was "remarkably inconsistent with the treatment record."  Docket Item 11 at 30.  But that conclusory statement ignores Dr. Perry's treatment record as well as her history of consistent opinions leading up to Dr. Toor's exam.  *See, e.g.*, Docket Item 11 at 266, 325, 332, 342.  So what the ALJ said was a "remarkabl[e] inconsisten[cy]" was anything but.

8

The ALJ found that Dr. Perry's opinions were inconsistent with the record and unsupported by "her own contemporaneous treatment notes." Docket Item 11 at 31. But that conclusory statement does not sufficiently address the supportability factor. *See Prieto v. Comm'r of Soc. Sec.*, 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) ("[T]he ALJ said only that [the medical source] opinion was 'supported by the medical evidence of record and by her underlying examination.' Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand.") (internal citation omitted). And "to the extent the ALJ found any purported inconsistencies [in Dr. Perry's records] to be significant, he could have requested more information from [Dr. Perry] to reconcile any internal inconsistency." *See Sutton v. Comm'r of Soc. Sec.*, 2022 WL 970748, at *6 (E.D.N.Y. Mar. 31, 2022).[10]

What is more, just as Dr. Toor's notes supported Dr. Perry's opinions, Dr. Perry's own notes supported her opinions about Gary's limitations as well. For example, in December 2018, Dr. Perry saw Gary for a primary diagnosis of "chronic pain" and noted that an orthopedist referred Gary back to her so that she could send him to a "chronic pain clinic" because of "disc issues on the lower spine." *See* Docket Item 11 at 859. She diagnosed lumbar degenerative disc disease. *Id.* In May 2018, Dr. Perry found

---

[10] The fact that Dr. Perry refers to *chronic* pain, *exacerbation* of back pain, and a *referral back* from an orthopedist because of back pain suggests that her records of Gary's back pain may be less than complete. So rather than simply finding that Dr. Perry's opinions were inconsistent with her treatment notes, which are somewhat sparse as to Gary's back issues, it was incumbent on the ALJ to contact Dr. Perry for a further explanation. *See Ransom v. Comm'r of Soc. Sec.*, 2020 WL 2833003, at *3 (W.D.N.Y. June 1, 2020) (quoting *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) ("If a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion.").

that Gary was suffering from "[c]hronic left SI joint pain."[11]  *See* Docket Item 11 at 866.  And she had treated Gary for similar issues since 2016.  *See id.* at 885 (October 2016 record noting that Gary saw her because of "exacerbation of lower back pain," complained of "excruciating back pain," was "clearly [in] pain," had "positive straight leg raise on the left," and suffered so much "pain to palpation" that the back exam was limited); *id.* at 888 (September 2016 report diagnosing Gary with radiculopathy and degenerative disc disease of the cervical spine).  So the ALJ's summary conclusion that Dr. Perry's opinions were not supported by her own notes is incorrect.

The ALJ's errors likely prejudiced Gary because the opinions of Dr. Perry and Dr. Toor conflict with the ALJ's less-restrictive RFC determination.  The ALJ found that Gary can perform light work[12] and can stand or walk for up to four hours per day; he did not include any limitation for sitting, lifting, or carrying.  *See* Docket Item 11 at 26.  The findings of Dr. Perry and Dr. Toor—and even the findings of the state agency consultant, Dr. Abueg—are more restrictive than the RFC, and those opinions therefore suggest that Gary cannot perform the level of work the RFC contemplates.  *See, e.g.*, *id.* at 266, 325, 332, 342 (Dr. Perry opined that Gary is "very limited" in walking,

---

[11] "SI" is shorthand for "sacroiliac."  *See* Docket Item 11 at 29; *see also* Sonya Collins and Tyler Wheeler, M.D., *Is Your SI Joint Giving You Back Pain?*, https://www.webmd.com/back-pain/si-joint-back-pain (Jun. 22, 2021).  Arthritis, or the inflammation of the joint, is the most common cause of pain in either SI joint.  *See, e.g.*, 30 C.F.R. § 4.66; *see also* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 114.09.

[12] "Light work involves lifting no more than 20 pounds at a time with *frequent lifting or carrying* of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added).  "'Frequent' means occurring from one-third to two-thirds of the time.  Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (1983).

standing, sitting, lifting, and carrying and can do so for only "1-2 [h]ours" in an 8-hour workday); *id.* at 610 (Dr. Toor opined Gary has "moderate limitation [in] sitting [for] a long time," and "moderate to marked limitation [in] standing, walking, lifting, and carrying"); *id.* at 69, 72, 79, 82 (Dr. Abueg found that Gary can perform only sedentary work,[13] can "[s]tand and/or walk" for "2 hours," and "lift and/or carry" "occasionally," meaning "cumulatively 1/3 or less of an 8[-]hour day."). So "because the limitations opined in [the physicians' opinions] were quite restrictive and could have resulted in a finding of disability—or at the very least a more restrictive RFC finding—if given weight by the ALJ," the ALJ's error was not harmless. *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (quoting *Lewis v. Colvin*, 2017 WL 2703656, at *2 (W.D.N.Y. June 23, 2017)).

Finally, the ALJ erred in finding an RFC with very specific limitations unsupported by medical evidence or opinions. For example, there is no support in the medical record for the conclusion that Gary can "stand and/or walk for up to 4 hours in an 8[-]hour workday." *See* Docket Item 11 at 26. In fact, as noted above, that specific limitation contradicts the medical opinions limiting Gary to standing and walking for no more than two hours. *See id.* at 266, 325, 332, 342 (Dr. Perry's opining that Gary can stand and walk for only "1-2 [h]ours" in an 8-hour workday); *id.* at 69, 79 (Dr. Abueg's finding that Gary can "[s]tand and/or walk" for only "2 hours"). So there is no medical support for the ALJ's lay opinion that Gary can stand or walk for four hours, as opposed to, say, three or five.

---

[13] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

11

As this Court has previously held, "when the record provides no support for the specific amount of time that a claimant can [walk,] sit[,] or stand without relief, a specific finding toward that end is not supported by substantial evidence."  *Theresa W. v. Comm'r of Soc. Sec.*, 2021 WL 4324421, at *4 (W.D.N.Y. Sept. 23, 2021); see also *Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option, . . . making it unclear to the Court how the ALJ arrived at this particular finding.").  And the new regulations do not change the rule that specific restrictions like these must come from medical evidence, not from the ALJ's lay opinion.  See *Linda L. v. Comm'r of Soc. Sec.*, 2021 WL 4147062, at *5-6 (W.D.N.Y. Sept. 13, 2021) ("[A]bsent any supporting medical evidence" for the ALJ's RFC determination, "[i]t is apparent that this finding solely comes from the lay opinion of the ALJ . . . and as such was rendered in error.").[14]

---

[14] The Commissioner cites recent Second Circuit caselaw for the proposition that "a medical opinion speaking to the specific RFC restrictions is not needed for an ALJ to craft a 'highly specific' RFC finding."  See Docket Item 14-1 at 27 (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108 (2d Cir. 2020) (summary order)); see also id. at 24-25 (citing *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46 (2d Cir. 2021) (summary order).  But none of the cases that the Commissioner cites suggests that an ALJ can fashion a specific RFC limitation from whole cloth when all the medical providers opined about more restrictive limitations.  In *Cook*, for example, the Second Circuit affirmed when "no other medical evidence in the record indicates that Cook faced any limitations not reflected in the RFC."  818 F. App'x at 109.   Similarly, the court in *Curry* affirmed when the RFC incorporated "additional exertional and postural limitations" prescribed by a treating physician.  855 F. App'x at 48 n.3.  Here, in contrast, the ALJ rejected medical opinions limiting Gary to standing and walking for only two hours a day and found—apparently based only on his own lay opinion—that Gary could stand and walk for four hours.  That specific finding—four hours—finds no support in the medical record and is beyond the expertise of a lay ALJ.  See *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for

Both because the ALJ did not adequately evaluate the medical opinion evidence under the new regulatory mandates and because the ALJ created an RFC with specific but medically unsupported limitations, remand is required.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 14, is DENIED, and Gary's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     October 28, 2022
           Buffalo, New York

                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE

---

competent medical opinion . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him'") (citation omitted); *Theresa W. v. Comm'r of Soc. Sec.*, 2021 WL 4324421, at *4 (W.D.N.Y. Sept. 23, 2021).